UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
**Caption in Compliance with D.N.J. LBR 9004-1**

**WHITE & CASE LLP**
Gregory F. Pesce (admitted *pro hac vice*)
111 South Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 881-5400
Email: gregory.pesce@whitecase.com

- and -

Andrew Zatz
Samuel P. Hershey (admitted *pro hac vice*)
Barrett Lingle (admitted *pro hac vice*)
Lucas G. Curtis (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Email: azatz@whitecase.com
          sam.hershey@whitecase.com
          barrett.lingle@whitecase.com
          lucas.curtis@whitecase.com

*Counsel to Debtors and Debtors-in-Possession*

**KEN ROSEN ADVISORS PC**
Kenneth A. Rosen
80 Central Park West
New York, New York 10023
Telephone: (973) 493-4955
Email: ken@kenrosenadvisors.com

*Co-Counsel to Debtors and Debtors-in-Possession*

| | |
|---|---|
| In re:<br><br>CBRM Realty Inc., *et al.*,<br><br>             Debtors.[1] | Chapter 11<br><br>Case No. 25–15343 (MBK)<br>(Jointly Administered)<br><br>Judge: Kaplan |
| CBRM Realty Inc.,<br><br>         *Plaintiff*,<br><br>         v.<br><br>Spano Investor LLC and Acquiom Agency Services LLC,<br><br>         *Defendants*. | Adv. Proc. No. ____ - _____ |

## COMPLAINT

CBRM Realty Inc. ("**CBRM**" or "**Plaintiff**") files this complaint (the "**Complaint**") against Spano Investor LLC ("**Spano**") and Acquiom Agency Services LLC, in its capacity as administrative agent and collateral agent under the Credit Agreement and Guaranty Agreement (as defined below) ("**Acquiom**" and together with Spano, "**Defendants**"). In support of this Complaint, and based upon knowledge, information, and belief, Plaintiff alleges as follows:

## <u>NATURE OF ACTION</u>[2]

1.      CBRM brings this adversary proceeding to avoid (i) a constructively fraudulent guaranty purportedly incurred by CBRM, and (ii) a related purported lien in the property of CBRM

---

[1] The debtors (the "**Debtors**") in the above captioned chapter 11 cases (the "**Chapter 11 Cases**"), along with the last four digits of each Debtor's federal tax identification number, are: CBRM Realty Inc. (2420), Crown Capital Holdings LLC (1411), Kelly Hamilton Apts LLC (9071), Kelly Hamilton Apts MM LLC (0765), RH Chenault Creek LLC (8987), RH Copper Creek LLC (0874), RH Lakewind East LLC (6963), RH Windrun LLC (0122), RH New Orleans Holdings LLC (7528), and RH New Orleans Holdings MM LLC (1951). The location of the Debtors' service address in these chapter 11 cases is: In re CBRM Realty Inc., et al., c/o White & Case LLP, 1221 Avenue of the Americas, New York, New York 10020.

[2] Capitalized terms used but not defined in the Nature of Action section shall have the meanings ascribed to them herein.

that was not perfected as of the Petition Date and is therefore subject to avoidance.  As will be demonstrated in this proceeding, Defendants—which purport to have a secured claim against CBRM worth tens of millions of dollars—are wholly unsecured or, more likely, have no claim at all.

2.      In June 2022, real estate investor Mark "Moshe" Silber entered into a Credit Agreement with Acquiom and certain lenders (the "**Lenders**"),[3] under which Mr. Silber was the sole borrower.  In June 2022 and October 2023, Mr. Silber received a total of $19 million in loans under the Credit Agreement.  In November 2023 (*i.e.*, well within the two-year look-back period under section 548 of the Bankruptcy Code), Mr. Silber caused CBRM to become a guarantor under the Credit Agreement and related Guaranty Agreement.  Mr. Silber received an additional $7.75 million in loan proceeds.  CBRM received nothing.  Consequently, this guaranty can and must be avoided as a constructive fraudulent transfer, for the benefit of the Debtors' estates.

3.      Approximately four months after CBRM became a guarantor, Mr. Silber defaulted under the Credit Agreement and shortly thereafter pled guilty to federal fraud charges.  Acquiom rushed to New York state court and received judgment against the Guarantors (including CBRM) in the amount of approximately $21 million.  Acquiom assigned its judgment to Spano (a special purpose vehicle created by the Lenders), which delivered a property execution letter to the Rockland County Sheriff, resulting in a purported judgment lien on CBRM's property.  However, as the plain terms of the property execution attached to the Sheriff's levy make clear, that levy expired 90 days after its service if CBRM's property was not transferred to the Sheriff.  The transfer of property never occurred, and Spano failed to take any other action to perfect the

---

[3] The Lenders are Clover Private Credit Opportunities Origination II LP and Clover Private Credit Opportunities Origination (Levered) II LP.

judgment lien.  As a result, the purported Judgment Lien was unperfected as of the Petition Date, and so it can and must be avoided for the benefit of the Debtors' estates.

4.      The unperfected Judgment Lien was subject to avoidance and, therefore, the Debtors identified Spano's purported claim as an unsecured claim.  Nevertheless, on July 15, 2025, Spano filed a Proof of Claim purporting to record an approximately $21 million secured claim against CBRM.  CBRM objects to the Proof of Claim because it is invalid or, at the very least, because the amounts asserted should be determined to be unsecured if any portion of the claim is allowed.  For these reasons, the Court should disallow the Proof of Claim in its entirety or, in the alternative, grant the Plaintiff's request to avoid Spano's purported lien such that its claim is for an unsecured amount.

## PARTIES

5.      On May 19, 2025 (the "**Petition Date**"), the Debtors filed for relief under chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**").

6.      CBRM is a corporation formed under the laws of New York with its principal place of business in New Jersey.

7.      Defendant Spano is a limited liability company formed under the laws of Delaware with its principal place of business in Delaware.

8.      Upon information and belief, defendant Acquiom is a limited liability company formed under the laws of Colorado with its principal place of business in Minnesota.

## Jurisdiction and Venue

9.      The United States Bankruptcy Court for the District of New Jersey (the "**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11 of the United States District Court for the*

*District of New Jersey*, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.).

10.    This matter is a core proceeding under 28 U.S.C. § 157(b).  This Court has jurisdiction to hear this proceeding and to enter a final order and judgment.  In the event that this Court or any other court finds any part of the proceeding to be 'non-core', this Court has non-core concurrent jurisdiction over this proceeding under 28 U.S.C. § 1334 because the relief sought herein relates to the Chapter 11 Cases.

11.    The Plaintiff consents to entry of final orders and judgments by this Court in this proceeding pursuant to Bankruptcy Rule 7008.  The Plaintiff also consents to entry of final orders or judgments by this Court if it is determined that this Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

12.    This Court has personal jurisdiction over all Defendants pursuant to Bankruptcy Rule 7004.

13.    Venue in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409 because this adversary proceeding arises under and in connection with cases commenced under chapter 11 of the Bankruptcy Code.

14.    The Plaintiff seeks relief pursuant to sections 502, 506, 544, 548, 550, and 551 of the Bankruptcy Code, rules 3007(b) and 7001 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and rules 3007-1 and 7003-1 of the Local Rules of the United States Bankruptcy Court of the District of New Jersey.

## **FACTUAL BACKGROUND**

I.     **The Debtors' Founder, Mark Silber, Orchestrates an Extension of Credit and Causes CBRM to Become a Guarantor**

15.     The Debtors are part of a real estate portfolio (the "**Crown Capital Portfolio**") indirectly owned by ultimate parent company CBRM.  The Crown Capital Portfolio was formed by real estate investor Moshe "Mark" Silber and certain affiliated parties to hold dozens of multifamily housing projects across the United States, with nearly 10,000 individual units.

16.     On June 2, 2022, Mr. Silber entered into that certain Credit Agreement with the Lenders and Acquiom, in its capacity as administrative agent (the "**Credit Agreement**"), wherein the Lenders agreed to make loans to Mr. Silber from time to time.[4]  Mr. Silber was the sole borrower under the Credit Agreement.  Credit Agreement Art. I ("'Borrower' means Moshe Silber[.]").

17.     Simultaneously, Mr. Silber caused various entities under his control to execute that certain Guaranty Agreement dated June 2, 2022, with Acquiom (the "**Guaranty Agreement**").[5] The entities that are signatories to the Guaranty Agreement are Fox Capital LLC, CBCC 1 LLC, CBCC 2 LLC, CBCC 3 LLC, CBCC 4 LLC, and CBCC 5 LLC (the "**Original Guarantors**"). Under the Guaranty Agreement, each Original Guarantor would be "jointly and severally liable with [Mr. Silber]" in the event that Mr. Silber defaulted on the loans or related obligations. Guaranty Agreement § 1.  CBRM was not an Original Guarantor.

18.     Under the Credit Agreement, Mr. Silber was obligated to make "Borrowing Requests" for approval by the Lenders.  Credit Agreement § 2.03.  As part of the Borrowing Requests, Mr. Silber had to include "a statement describing in detail, satisfactory to the Lenders

---

[4] The Credit Agreement is attached as **Exhibit A**.

[5] The Guaranty Agreement is attached as **Exhibit B**.

in their reasonable discretion, the investment and/or assets [] to which the proceeds of such Borrowing will be applied by the Borrower (including a statement as to whether such investment is a Proposed Cash Investment)" (the "**Proposed Use of Proceeds**").[6] Credit Agreement § 2.03(b).

19.    Upon information and belief, on or about June 2, 2022, Mr. Silber received a loan in the aggregate amount of approximately $15 million under the Credit Agreement. According to the borrowing request dated June 2, 2022, sent by Mr. Silber (the "**June 2022 Borrowing Request**"), there is no indication that CBRM received any consideration in connection with this loan, and CBRM is not listed as a beneficiary of the Proposed Use of Proceeds.[7]

20.    Upon information and belief, on or about October 18, 2023, Mr. Silber received a loan in the aggregate amount of approximately $4 million under the Credit Agreement. According to the borrowing request dated October 12, 2023, sent by Mr. Silber (the "**October 2023 Borrowing Request**"), there is no indication that CBRM received any consideration in connection with this loan, and CBRM is not listed as a beneficiary of the Proposed Use of Proceeds.[8]

21.    On November 28, 2023, Guaranty Supplement No. 1 was executed between Acquiom and Westwood Jackson Apts MM LLC, Westwood Jackson Apts LLC, and CBRM (the "**Guaranty Supplement**"),[9] by which those entities became additional guarantors under the Credit Agreement and were bound by the same terms as the original Guaranty Agreement (together with the Original Guarantors, the "**Guarantors**," and the guaranty provided by CBRM, the "**Debtor Guaranty**"). Under the Guaranty Agreement and Guaranty Supplement, each Guarantor would

---

[6] All capitalized terms used in this sentence have the meanings ascribed to them in the Credit Agreement.

[7] The June 2022 Borrowing Request is attached as **Exhibit C**.

[8] The October 2023 Borrowing Request is attached as **Exhibit D**.

[9] The Guaranty Supplement is attached as **Exhibit E**.

be "jointly and severally liable with [Mr. Silber]" in the event Mr. Silber defaulted on the loans or related obligations.  Guaranty Agreement § 1.

22.    Upon information and belief, on or about November 28, 2023, Mr. Silber received a loan in the aggregate amount of approximately $7.75 million under the Credit Agreement. According to the borrowing request dated November 28, 2023, sent by Mr. Silber (the "**November 2023 Borrowing Request**"), there is no indication that CBRM received any consideration in connection with this loan, and CBRM is not listed as a beneficiary of the Proposed Use of Proceeds.[10]

23.    Upon information and belief, CBRM did not receive any consideration — much less reasonably equivalent value — in exchange for becoming an additional guarantor under the Credit Agreement, and thereby undertaking a guaranty of more than $26 million of debt.

24.    On March 6, 2024, Acquiom, in its capacity as administrative agent and collateral agent, sent Mr. Silber and the Guarantors a Notice of Event of Default and Acceleration (the "**Notice**").[11]  As set forth in the Notice, Acquiom, acting at the direction of the Lenders, notified Mr. Silber of his failure to make an interest payment due and payable on March 1, 2024, in the amount of $234,798.70.  Notice at 1.  Pursuant to section 7.01 of the Credit Agreement, Acquiom declared the principal and interest of all outstanding loan amounts and fees due and payable, which, at the time of the Notice, equaled $19,185,000.  *Id*.; *see also* Credit Agreement § 7.01.  The Notice also demanded immediate payment by the Guarantors, including CBRM.  Notice at 1.

---

[10] The November 2023 Borrowing Request is attached as **Exhibit F**.

[11] The Notice is attached as **Exhibit G**.

II.    **Mr. Silber Pleads Guilty to Fraud, Leading to His Resignation and the Appointment of Ms. LaPuma as the Independent Fiduciary**

25.    Mr. Silber and his co-investors were targets of an extensive investigation by the federal government related to certain real estate projects unrelated to the Crown Capital Portfolio. On April 17, 2024, Mr. Silber entered into a plea agreement with the Fraud Section of the Department of Justice and the United States Attorney for the District of New Jersey in connection with a charge of conspiracy to commit wire fraud affecting an institution, pursuant to 18 U.S.C. § 371.

26.    During the course of the investigations and plea negotiations, Mr. Silber neglected the management of the Crown Capital Portfolio, leading to numerous properties falling into default or becoming subject to receivership proceedings.  Once the plea became public, Mr. Silber was disqualified from continuing to manage the Crown Capital Portfolio.  The Crown Capital Portfolio's stakeholders, including certain investors (the "**Noteholders**") who purchased notes (the "**Notes**") from Crown, as issuer, with CBRM as guarantor, were concerned about these developments because the Crown Capital Portfolio's value supported the payment of principal and interest under the Notes.

27.    Following discussions between Mr. Silber's counsel and the Noteholders' counsel (Faegre Drinker Biddle & Reath LLP) and financial advisor (IslandDundon LLC), on August 29, 2024, the parties entered into a forbearance agreement (the "**Forbearance Agreement**").  The Forbearance Agreement addressed various matters involving pending defaults under the Notes and Mr. Silber's go-forward involvement with the portfolio, and established a process to ensure that the Crown Capital Portfolio had sufficient fiduciary oversight.  Among other things, the Forbearance Agreement required "the services of an individual . . . to function as an independent

fiduciary" of CBRM and Crown, and provided that individual with an irrevocable proxy for so long as the obligations under the Forbearance Agreement remained pending.

28.    On September 26, 2024, the Noteholders party to the Forbearance Agreement consented to the appointment of Elizabeth LaPuma—a restructuring professional with over 20 years' experience as an investment banker and corporate director, including for companies in distress— as the independent fiduciary of CBRM and Crown (the "**Independent Fiduciary**").  On December 9, 2024, Ms. LaPuma was appointed as manager of the Debtors through an omnibus written consent.

### III.    Acquiom Obtains a Purported Judgment Against the Guarantors and Assigns It to Spano

29.    Less than one month after Mr. Silber's plea agreement, on May 2, 2024, Acquiom initiated an action in New York State court styled *Acquiom Agency Servs. LLC v. Fox Cap. LLC,* No. 652265/2024 (N.Y. Sup. Ct. N.Y. Cnty. May 2, 2024) (the "**NY Action**") against the Guarantors (including CBRM), seeking judgment against each Guarantor in favor of Acquiom in the amount of $19,185,000, plus any other monetary sums allegedly due under the Credit Agreement.  *See* NY Action Dkt. No. 2.[12]   On May 2, 2024, Acquiom moved for summary judgment in lieu of filing a complaint against the Guarantors.  *Id.*  On August 6, 2024, the court issued an order granting Acquiom's motion for summary judgment.  NY Action Dkt. Nos. 29-30. The court ordered the Guarantors to pay $19,185,000 and directed the parties to appear before the court for an inquest regarding an award of interest.  NY Action Dkt. No. 29 at 5.

30.    On September 5, 2024, the court entered judgment in the NY Action, awarding Acquiom $21,020,452.60 on account of purported damages resulting from Mr. Silber's breach of

---

[12] "**NY Action Dkt. No.**" refers to the docket styled *Acquiom Agency Servs. LLC v. Fox Cap. LLC,* No. 652265/2024 (N.Y. Sup. Ct. N.Y. Cnty. May 2, 2024).

the Credit Agreement.  NY Action Dkt. No. 37 (the "**Judgment**").[13]  On September 9, 2024,

Acquiom assigned its Judgment to Spano, a special purpose entity formed by the Lenders.  NY

Action Dkt. No. 39.

### IV.    Spano Fails to Perfect Its Purported Judgment Lien

31.    On or around December 13, 2024, Spano delivered a property execution letter to

the Rockland County Sheriff, directing the Sheriff to sell all of CBRM's interests in personal

property, including all of its rights, title and interest in Crown (the "**CBRM Property**").  *See* NY

Action Dkt. No. 101.  Under New York law, upon delivery of this execution letter, Spano acquired

a purported judgment lien on the CBRM Property (such interest, the "**Judgment Lien**").  *See* N.Y.

C.P.L.R. § 5202.

32.    On or around January 11, 2025, counsel to Spano asked counsel to the Independent

Fiduciary, White & Case LLP ("**White & Case**"), to accept service on behalf of CBRM of a

Sheriff's levy (the "**Levy**").[14]  On January 15, 2025, White & Case accepted service of the Levy.

33.    The property execution attached to the Levy expressly stated the following: "TAKE

FURTHER NOTICE THAT at the expiration of 90 days after a levy is made by service of this

execution, or such further time as the court upon motion of the judgment creditor has provided,

this levy shall be void except as to property or debts which have been transferred or paid to the

enforcement officer or as to which a proceeding under CPLR 5225 or 5227 has been brought."

Levy at 7.  This notice was consistent with Article 5232(a) of the New York Civil Practice Law

and Rule.  *See* CPLR 5232(a) ("At the expiration of ninety days after a levy is made by service of

the execution, or of such further time as the court, upon motion of the judgment creditor or support

---

[13] The Judgment is attached as **Exhibit H**.

[14] The Levy is attached as **Exhibit I**.

collection unit has provided, the levy shall be void except as to property or debts which have been

transferred or paid to the sheriff or to the support collection unit or as to which a proceeding under

sections 5225 or 5227 has been brought.").

34.     Article 5225 of the New York Civil Practice Law and Rule provides that, "[u]pon

***motion of the judgment creditor***, [and] upon notice to the judgment debtor. . .the court shall order

that the judgment debtor pay the money, or so much of it as is sufficient to satisfy the judgment,

to the judgment creditor …"  CPLR Art. 5225 (emphasis added).  Similarly, Article 5227 provides

that "[u]pon a ***special proceeding commenced by the judgment creditor***, against any person who

it is shown is or will become indebted to the judgment debtor, the court may require such person

to pay to the judgment creditor the debt upon maturity, or so much of it as is sufficient to satisfy

the judgment, and to execute and deliver any document necessary to effect payment; or it may

direct that a judgment be entered against such person in favor of the judgment creditor."  CPLR

Art. 5227 (emphasis added).

35.     The 90-day deadline set forth in the Levy expired on April 15, 2025, and, upon

information and belief, the CBRM Property has not been transferred to the Sherriff.  Indeed, in a

June 12, 2025, filing before this Court, Spano admitted that a sheriff's sale of the CBRM Property

was never completed before the Petition Date.  *See Limited Objection and Reservation of Rights*

*of Spano Investor LLC with Respect to Final DIP Financing Orders* [Bankr. Dkt. No. 135] ¶ 9.[15]

The Plaintiff is unaware of any motion by Spano for an extension of time with respect to the

execution of the Levy, or any proceedings by Spano under CPLR 5225 or 5227.  Additionally, the

Plaintiff used a third-party vendor to search for liens or UCC filing statements in favor of Spano

---

[15] "**Bankr. Dkt. No.**" refers to the docket styled *In re CBRM Realty Inc., et al.,* Case No. 25-15343 (MBK) (Bankr. D.N.J. May 19, 2025).

in the State of New York and, specifically, Rockland County, and no lien recordations were identified.[16]

36.    Accordingly, under New York Law, the Levy has become void, and any purported judgment lien belonging to Spano was unperfected as of the Petition Date.[17]

**V.    The Debtors File for Chapter 11 Protection**

37.    On the Petition Date, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code commencing the above-captioned chapter 11 cases.  The Debtors' chapter 11 cases are being jointly administered [Bankr. Dkt. No. 51].  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases and no official committees have been appointed or designated.

38.    On July 2, 2025, the Debtors filed the *Amended Schedules of Assets and Liabilities for CBRM Realty Inc. (Case No. 25-15343)* [Bankr. Dkt. No. 252], which list Spano's purported claim as unsecured, contingent, unliquidated, and disputed.

**VI.    Spano Files a Proof of Claim**

39.    On July 15, 2025, Spano filed a proof of claim (Claim No. 4) asserting a secured claim against CBRM for $21,118,881.01 (the "**Proof of Claim**").[18]  The purported basis of the Proof Claim is the Judgment and purported Judgment Lien, as discussed above.  *See* Proof of Claim.  Spano admits in its Proof of Claim that a sheriff's sale of the CBRM Property was never completed before the Petition Date.  *See* Proof of Claim Rider ¶ 7.  Spano also asserts a claim for

---

[16] The results of the lien and UCC search are attached as **Exhibit J**.

[17] As of the date of this Complaint, the only satisfaction of judgment recorded on the NY Action docket is for $4,000. NY Action Dkt. No. 99.  This satisfaction of judgment was purportedly accomplished by Spano through credit bids on certain of the Guarantors' property at a July 25, 2024, auction—before the creation of the Judgment, Judgment Lien, and Levy.  *See* NY Action Dkt. No. 75 (proof of auction).  As such, this satisfaction of judgment pre-dated and did not perfect the purported Judgment Lien.

[18] The Proof of Claim and *Rider to Proof of Claim of Spano Investor LLC* is attached as **Exhibit K**.

post-petition interest and all reasonable fees, costs, or charges under section 506(b) of the Bankruptcy Code.

## **FIRST CAUSE OF ACTION**

**Avoidance and Recovery of Constructive Fraudulent Conveyance – Debtor Guaranty**
**11 U.S.C. §§ 544, 548, 550, and 551 and Applicable State Law**
**(Against Defendants)**

40.     The Plaintiff repeats and realleges the allegations in the foregoing paragraphs, which are incorporated by reference as if fully set forth herein.

41.     Pursuant to the Guaranty Supplement executed on November 28, 2023 (*i.e.*, within two years prior to the Petition Date), CBRM incurred purported obligations to guarantee debt in connection with the Credit Agreement.

42.     The Debtor Guaranty is an obligation incurred by CBRM to Acquiom within the appropriate lookback period set forth in the Bankruptcy Code and relevant fraudulent transfer statutes under state law.  The Debtor Guaranty is also the sole alleged basis for Defendants' purported claim against CBRM.

43.     CBRM received no consideration, much less reasonably equivalent value, in connection with the Credit Agreement, Guaranty Agreement, Guaranty Supplement, and the incurrence of the Debtor Guaranty.  As explained above, the Credit Agreement was executed by Mr. Silber and inured to the benefit of Mr. Silber, not the Guarantors.

44.     The Debtor Guaranty was incurred at a time when CBRM was (i) insolvent (or CBRM became insolvent as a result of incurring such obligations), (ii) engaged in a transaction, or was about to be engaged in a transaction, in which CBRM was unreasonably undercapitalized, or (iii) intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as such debts matured and became due.

45.     Based upon the foregoing, the Debtor Guaranty constitutes an avoidable fraudulent transfer pursuant to section 548 of the Bankruptcy Code, section 544(b) of the Bankruptcy Code, and the substantially similar fraudulent conveyance provisions under applicable state law.

46.     In accordance with section 550(a) of the Bankruptcy Code, the Plaintiff seeks to (i) invalidate and avoid the Debtor Guaranty, (ii) to the extent applicable, recover the Debtor Guaranty or the value thereof, and (iii) obtain such other relief as the Court deems appropriate in connection with the avoidance and recovery of the Debtor Guaranty, for the benefit of the Debtors' estates.

## SECOND CAUSE OF ACTION

### Avoidance and Recovery of the Judgment Lien
### 11 U.S.C. §§ 544, 550, and 551
### (Against Defendants)

47.     The Plaintiff repeats and realleges the allegations in the foregoing paragraphs, which are incorporated by reference as if fully set forth herein.

48.     Section 544 of the Bankruptcy Code permits a trustee or debtor in possession to avoid any security interest that is not properly perfected as of the petition date, which causes the relevant party to lose its purported security interest and become a general unsecured creditor with respect to the relevant asserted amount, thereby preserving the value of the avoided security interest for the benefit of the estates.

49.     NY CLPR § 5232(a) provides that a judgment lien created by a levy through service of execution must be perfected within 90 days by, among other things, obtaining either payment in full of the judgment, or the property in which the creditor has an interest.  After the 90-day period, the levy becomes void unless the creditor initiates a proceeding under either CPLR 5225 or CPLR 5227.  The Levy itself states this rule.

50.     The Levy was served on January 15, 2025, when White & Case agreed to accept service on behalf of CBRM.  More than ninety days have passed since service was effected and, upon information and belief, the CBRM Property has not been transferred to the Sheriff. Additionally, upon information and belief, Spano has not initiated an action under either CPLR 5225 or CPLR 5227 to perfect the Judgment Lien.

51.     As a result, the Judgment Lien was unperfected as of the Petition Date.  The Judgment Lien is therefore subject to avoidance, and should be avoided, for the benefit of the Debtors' estates under section 544(a)(1) of the Bankruptcy Code, and preserved for the benefit of the Debtors' estates pursuant to section 551 of the Bankruptcy Code.

52.     To the extent the Judgment Lien is not automatically preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code, the Plaintiff seeks, in accordance with sections 544 and 550(a) of the Bankruptcy Code, to (i) invalidate and avoid the Judgment Lien, (ii) to the extent applicable, recover the Judgment Lien or the value thereof, and (iii) such other relief as the Court deems appropriate in connection with the avoidance and recovery of the Judgment Lien, for the benefit of the Debtors' estates.

## THIRD CAUSE OF ACTION

### Disallowance of Claims
### 11 U.S.C. § 502(d)
### (Against Defendants)

53.     The Plaintiff repeats and realleges the allegations in the foregoing paragraphs, which are incorporated by reference as if fully set forth herein.

54.     Defendants are entities from which property is recoverable under section 550 of the Bankruptcy Code, or are transferees of transfers avoidable under sections 544 and 548 of the Bankruptcy Code.

55. Defendants have not paid the amount or turned over any of the property transferred for which Defendants are liable under section 550 of the Bankruptcy Code.

56. To the extent that any of the Defendants assert any claims, including any claims that are filed or scheduled, against the Debtors, such claims are should be determined to be disallowed unless and until such Defendant, as appropriate, returns to the Debtors' estates property, and pays the Debtors' estates amounts, for which such Defendant is liable under section 550 of the Bankruptcy Code.

## FOURTH CAUSE OF ACTION

### Disallowance of Claim
### 11 U.S.C. § 502(b)
### (Against Spano)

57. The Plaintiff repeats and realleges the allegations in the foregoing paragraphs, which are incorporated by reference as if fully set forth herein.

58. Spano has filed the Proof of Claim against CBRM predicated on the Debtor Guaranty, Judgment, and purported Judgment Lien.

59. A filed proof of claim is "deemed allowed, unless a party in interest ... objects." 11 U.S.C. § 502(a). If a party asserts an objection refuting at least one of the claim's essential allegations, the claimant has the burden of demonstrating the validity of the claim. The burden of persuasion is always on the claimant.

60. Section 502(b)(1) of the Bankruptcy Code provides, in relevant part, that a claim may not be allowed to the extent that "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law …" 11 U.S.C. § 502(b)(1).

61. The Proof of Claim is unenforceable against CBRM and the property of CBRM because, as set forth *supra*, the Debtor Guaranty is avoidable as a fraudulent transfer under sections

544 and 548 of the Bankruptcy Code.  Therefore, CBRM is not liable under the Credit Agreement,

Guaranty Agreement, and Guaranty Supplement.

62.    The Proof of Claim should therefore be disallowed and expunged in its entirety.

## FIFTH CAUSE OF ACTION

**Disallowance of Claim**
**11 U.S.C. §§ 502(b), 506**
**(Against Spano)**

63.    The Plaintiff repeats and realleges the allegations in the foregoing paragraphs,

which are incorporated by reference as if fully set forth herein.

64.    Spano has filed the Proof of Claim against CBRM predicated on the Judgment and

purported Judgment Lien.

65.    A filed proof of claim is "deemed allowed, unless a party in interest ... objects."  11

U.S.C. § 502(a).    If a party asserts an objection refuting at least one of the claim's essential

allegations, the claimant has the burden of demonstrating the validity of the claim.  The burden of

persuasion is always on the claimant.

66.    Section 502(b)(1) of the Bankruptcy Code provides, in relevant part, that a claim

may not be allowed to the extent that "such claim is unenforceable against the debtor and property

of the debtor, under any agreement or applicable law …" 11 U.S.C. § 502(b)(1).

67.    If the Proof of Claim is not disallowed and expunged in its entirety, the Proof of

Claim is nonetheless unenforceable against CBRM and the property of CBRM as a secured claim

because, as set forth *supra*, the Judgment Lien is subject to avoidance as an unperfected lien under

section 544 of the Bankruptcy Code.  Therefore, to the extent the claims asserted by Spano in the

Proof of Claim are allowed, they should be determined to be for unsecured amounts.  The claims

asserted by Spano are not secured claims within the meaning of sections 506(a) and 506(d) of the

Bankruptcy Code.

68.    Additionally, Spano, as an unsecured creditor, is not entitled to any claims for post-petition interest, nor any reasonable fees, costs, or charges provided for by applicable law, including under section 506(b) of the Bankruptcy Code.

69.    The Proof of Claim should therefore be disallowed at least to the extent that it asserts that Spano's purported claim is secured.  Additionally, all payments sought by the Proof of Claim in connection with any purported security interest should be disallowed.

## RESERVATION OF RIGHTS

70.    The Debtors reserves the right to amend, modify, or supplement this Complaint and objection to Spano's Proof of Claim, and to file additional objections regarding Spano's Proof of Claim on any basis after further investigation.  Further, the Debtors reserve the right to object to any other claims (or a portion thereof) by Defendants on any other grounds whatsoever, including, among other things, based on amount, priority, classification, secured status, or otherwise.

71.    Nothing in this Complaint and objection regarding Spano's Proof of Claim shall be deemed to be any of the following: (a) an admission as to the amount of, basis for, or validity of any claim against the Debtors under the Bankruptcy Code or other applicable non-bankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim; (c) a promise or requirement to pay any particular claim; (d) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; or (e) a waiver of any of the Debtors' claims or causes of action which may exist against any entity under the Bankruptcy Code or any other applicable law.

## **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff respectfully requests that the Court enter an order consistent

with the relief sought in the above listed causes of action as follows:

(i)     Avoiding, as a constructive fraudulent transfer under sections 544 and 548 of the
Bankruptcy Code, and all applicable state laws, the Debtor Guaranty;

(ii)    Ordering (a) that under section 550(a) of the Bankruptcy Code, the Debtor Guaranty
is invalidated and avoided, (b) that the Plaintiff may recover the Debtor Guaranty
or the value thereof, and (c) such other relief as the Court deems appropriate in
connection with the avoidance and recovery of the Debtor Guaranty, for the benefit
of the Debtors' estates;

(iii)   Avoiding, as an unperfected or improperly perfected lien under section 544 of the
Bankruptcy Code, and all applicable state laws, liens arising out of the Judgment
Lien;

(iv)    Ordering that, in accordance with section 551 of the Bankruptcy Code, the
Judgment Lien is automatically preserved for the benefit of the estates;

(v)     Ordering, under section 550(a) of the Bankruptcy Code, (a) that the Judgment Lien
is invalidated and avoided, (b) that the Plaintiff may recover the Judgment Lien or
the value thereof, and (c) such other relief as the Court deems appropriate in
connection with the avoidance and recovery of the Judgment Lien, for the benefit
of the Debtors' estates;

(vi)    Ordering that, pursuant to the applicable provisions of the Bankruptcy Code,
including, without limitation, section 502(d), each claim asserted by Defendants is
disallowed;

(vii)   Ordering that, pursuant to the applicable provisions of the Bankruptcy Code,
including, without limitation, section 502(b), the claims raised in the Proof of Claim
are disallowed and expunged in their entirety;

(viii)  Ordering that, if the claims raised in the Proof of Claim are not disallowed and
expunged in their entirety, pursuant to the applicable provisions of the Bankruptcy
Code, including, without limitation, sections 502(b) and 506, the claims raised in
the Proof of Claim are disallowed to the extent that they assert amounts that are
secured, and all payments sought by the Proof of Claim in connection with any
purported security interest are disallowed;

(ix)    Granting the Plaintiff costs of suit incurred herein, including, without limitation,
attorneys' fees, costs, and other expenses incurred in this action, to the fullest extent
allowed by applicable law;

(x)     Granting the Plaintiff pre- and post-judgment interest on the judgment amount to
the fullest extent allowed by applicable law; and

(xi)    Granting such other and further relief, at law or in equity, to which the Plaintiff is
justly entitled.

Dated: July 18, 2025

Respectfully submitted,

/s/ Andrew Zatz
**WHITE & CASE LLP**
Gregory F. Pesce (admitted *pro hac vice*)
111 South Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 881-5400
Email:  gregory.pesce@whitecase.com

- and -

Andrew Zatz
Samuel P. Hershey (admitted *pro hac vice*)
Barrett Lingle (admitted *pro hac vice*)
Lucas G. Curtis (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Email:  azatz@whitecase.com
        sam.hershey@whitecase.com
        barrett.lingle@whitecase.com
        lucas.curtis@whitecase.com

*Counsel to Debtors and*
*Debtors-in-Possession*

**KEN ROSEN ADVISORS PC**
Kenneth A. Rosen
80 Central Park West
New York, New York 10023
Telephone: (973) 493-4955
Email: ken@kenrosenadvisors.com

*Co-Counsel to Debtors and Debtors-in-*
*Possession*